Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| LAURA ELENA SURILLO ASCAR<br><br>**Recurrente**<br><br>v.<br><br>RITA HERNÁNDEZ, PRESIDENTA, JUNTA DE DIRECTORES DEL CONDOMINIO MANSIONES DE GARDEN HILLS<br><br>DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR<br><br>**Recurridos** | KLRA202400358 | *Revisión Judicial* procedente del Departamento Asuntos del Consumidor (DACO)<br><br>Querella Núm.: C-SAN-2019-0004213<br><br>Sobre: Condominio (Ley Núm. 104 de 25 de junio de 1958, según enmendada) |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Pagán Ocasio, juez ponente

# SENTENCIA

En San Juan, Puerto Rico, a 16 de julio de 2024.

## I.

El 8 de julio de 2024, la señora Laura Elena Surillo Ascar (señora Surillo Ascar o recurrente), presentó antes nos una *Solicitud de Revisión Administrativa* en la que solicitó que revisemos una *Resolución* emitida por el Departamento de Asuntos del Consumidor, Regional de San Juan (DACO o agencia administrativa) el 30 de abril de 2024, notificada y archivada en autos el 1 de mayo de 2024 y puesta en el correo el 2 de mayo de 2024.[1]

Por medio de dicha determinación, el DACO ordenó a la Junta de Directores y al Consejo de Titulares del Condominio Mansiones de Garden Hills que, de forma inmediata, tome las medidas necesarias para remediar satisfactoriamente las filtraciones manifestadas en el área de la sala del apartamento de la señora Surillo Ascar. Estas medidas incluían (i) reparar las deficiencias de

---

[1] Apéndice del recurso de *revisión judicial*, Anejo 2, págs. 65-74. (Se toma conocimiento judicial de estos hechos procesales).

origen comunal y (ii) requerirle a la titular del apartamento 18-I, la licenciada Marta Meléndez (licenciada Meléndez o licenciada Marta Meléndez), que realice las reparaciones correspondientes en aras de salvaguardar la integridad del edificio. El DACO advirtió que, de la licenciada Meléndez no realizar las reparaciones indicadas, la Junta de Directores y el Consejo de Titulares del Condominio Mansiones de Garden Hills deberán tomar las acciones legales pertinentes contra ella, de ser necesario. Además, la agencia administrativa ordenó a la Junta de Directores y al Consejo de Titulares del condominio a pagarle a la señora Surillo Ascar la cantidad de $2,000.00 en concepto de angustias mentales, dentro del término de treinta (30) días, la cual devengará el interés legal correspondiente en caso de incumplir con dicho término.

En su comparecencia ante nos, la señora Surillo Ascar solicitó la eliminación de la determinación de hecho número 33 y la conclusión de derecho del tercer párrafo en la página 7 de la *Resolución* recurrida. Por lo que está de acuerdo con el resultado al que llegó la agencia recurrida.

El 10 de julio de 2024, la recurrente presentó una *Moción en Cumplimiento de la Regla 58 del Reglamento del Tribunal de Apelaciones* donde informó haberle notificado el recurso de revisión judicial a la licenciada Meléndez a su nueva dirección postal.

Además, y como cuestión de umbral, debemos mencionar que la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 7 (B) (5), confiere a este foro la facultad para prescindir de escritos, en cualquier caso, ante su consideración, con el propósito de lograr su más justo y eficiente despacho. Dadas las particularidades de este caso, prescindimos de la comparecencia de la parte recurrida.

**II.**

El caso de marras tiene su génesis el 21 de diciembre de 2005, cuando la señora Surillo Ascar presentó ante el DACO la querella número 100030408 en contra de la Junta de Directores por problemas con la filtración de agua en su apartamento, después de transcurridos cuatro (4) meses de reparación. Posteriormente, el 12 de abril de 2006, la señora Surillo Ascar enmendó dicha querella con el propósito de incluir como querellada a la licenciada Meléndez, titular del apartamento 18-I ubicado sobre el suyo.[2]

Luego de varios trámites procesales, el 23 de enero de 2008, el DACO emitió una *Resolución*, por la cual ordenó a la Junta de Directores que, dentro de un término de treinta (30) días de la notificación de dicha determinación, tenía que reparar "satisfactoriamente el problema de filtraciones existente en el techo del apartamento de la parte querellante".[3]

Aunque la señora Surillo Ascar y la Junta de Directores presentaron sus respectivas mociones de reconsideración, el DACO no actuó dentro del término dispuesto por ley. Ante ello, la Junta de Directores presentó un recurso de revisión judicial, y la señora Surillo Ascar radicó una solicitud de paralización de los procedimientos.[4]

El 18 de abril de 2008, un Panel hermano de este Tribunal, emitió una *Sentencia* en el caso ***Laura Elena Surillo v. Junta de Directores Condominio Mansiones de Garden Hills et als.***, KLRA0800323, en la que confirmó la determinación del DACO.[5]

Posteriormente, el 18 de enero de 2019, la recurrente presentó la querella número C-SAN-2019-0004213 en contra de la Junta de

---

[2] *Íd.*, Anejo 1, pág. 42. (Se toma conocimiento judicial de estos hechos procesales, según consignados por un Panel hermano de este Tribunal en la *Sentencia* del caso KLRA0800323).

[3] *Íd.*, Anejo 3, págs. 80-88.

[4] *Íd.*, Anejo 1, págs. 45-46. (Se toma conocimiento judicial de estos hechos procesales).

[5] *Íd.*, págs. 41-49.

Directores y el Consejo de Titulares del Condominio Mansiones Garden Hills por una supuesta filtración que se manifestó a través de una grieta en el techo de la sala de su apartamento 17-I localizado en el Condominio Mansiones de Garden Hills.[6] Sostuvo que no era la primera vez que dicha filtración salía por la grieta. Por el contrario, el 21 de diciembre de 2005, había radicado la antes mencionada querella número 100030408. Luego del cierre de dicho caso en el año 2008, según arguyó la recurrente, la Junta de Directores decidió sellar la grieta, pero la filtración persistió y el 18 de marzo de 2016 radicó otra querella ante el DACO con el número Q SJ 0016207 para ordenar a la Junta de Directores a corregir la filtración. Este último pleito fue archivado, luego de que la Junta de Directores del condominio hiciera un arreglo previo a una vista señalada en dicho caso, y no sin antes se decidiera que era responsabilidad de dicha Junta de Directores encontrar el origen de la filtración.

A través de la querella número C-SAN-2019-0004213, la recurrente también solicitó que se determine el origen de la filtración y que se repare; que la parte responsable pague por los alegados daños causados a su apartamento y sus muebles; y en el caso de resurgir el mismo problema de filtración, que la Junta de Directores actúe rápidamente para corregirlo, entre otros remedios.

Luego de varios trámites procesales, y según se desprende de la *Resolución* recurrida respecto a la querella número C-SAN-2019-0004213,[7] la agencia administrativa celebró una vista administrativa el 8 de septiembre de 2022 y continuó la misma los días 2 de diciembre de 2022, el 7 de febrero de 2023 y el 11 de abril de 2023. Tanto la señora Surillo Ascar como el Consejo de Titulares del Condominio Mansiones de Garden Hills comparecieron. Sin embargo, como parte con interés, la licenciada Marta Meléndez no

---

[6] *Íd.*, págs. 1-64.
[7] *Íd.*, Anejo 2, págs. 65-74.

compareció a pesar de haber sido debidamente notificada de los procedimientos.

Después de revisar la prueba presentada por las partes y los documentos que obran en el expediente, el 30 de abril de 2024, el DACO emitió una *Resolución,* notificada y archivada en autos el 1 de mayo de 2024 y puesto en el correo el 2 de mayo de 2024.[8] Dictaminó que la Junta de Directores y el Consejo de Titulares del Condominio Mansiones de Garden Hills deberán remediar satisfactoriamente las filtraciones; a saber, reparar las deficiencias de origen comunal y requerirle a la licenciada Meléndez a realizar las reparaciones correspondientes, en aras de salvaguardar la integridad del edificio. De ella incumplir, la Junta de Directores y Consejo de Titulares del Condominio Mansiones de Garden Hills deberán tomar las acciones legales pertinentes contra la licenciada Meléndez, de ser necesario.

En lo pertinente, el DACO formuló 34 determinaciones de hechos dentro de la que se encontró la número 33, la cual dispone que, "33. [l]a parte querellante no le ha reclamado formalmente al titular del apartamento 18-I".[9]

Además, realizó la siguiente conclusión de derecho:

> De otra parte, la querellante tuvo conocimiento desde el año 2005, que la forma en que estaban instaladas las ventanas del apartamento 18-I era la fuente principal del problema de filtraciones en su apartamento. La parte querellante tenía el derecho de acudir al Tribunal de Primera Instancia y reclamarle al titular del apartamento 18-I por las filtraciones y los daños que las mismas estaban provocando en el interior de su apartamento.[10]

Insatisfecha con el lenguaje utilizado en la *Resolución* de la agencia, el 21 de mayo de 2024, la señora Surillo Ascar radicó una

---

[8] *Íd.*
[9] *Íd.*, pág. 68.
[10] *Íd.*, pág. 71.

*Moción en Solicitud de Reconsideración Parcial* sobre la cual el DACO no actuó.[11]

Inconforme, el 8 de julio de 2024, la señora Surillo Ascar presentó un recurso de revisión judicial antes nos y solicitó la eliminación de la determinación de hecho número 33 y la conclusión de derecho del tercer párrafo de la página 7 de la *Resolución* recurrida. En relación al resultado llegado por la agencia recurrida no se solicitó nada.

Resulta menester evaluar el marco doctrinal para atender este recurso apelativo.

**III.**

**A.**

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38 del 30 de junio de 2017, según enmendada, 3 LPRA secs. 9601 *et seq.*, establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. A tenor con esta y la jurisprudencia aplicable, la revisión judicial consiste, esencialmente, en determinar si la actuación de la agencia se dio dentro de las facultades que le fueron conferidas por ley, si es compatible con la política pública que la origina y si es legal y razonable. ***Capó Cruz v. Junta de Planificación***, 204 DPR 581, 590-592 (2020); ***Rolón Martínez v. Supte. Policía***, 201 DPR 26, 35 (2018). Es decir, que este tipo de revisión busca limitar la discreción de las agencias y garantizar que estas desempeñen sus funciones de acuerdo con los confines de la ley. ***García Reyes v. Cruz Auto Corp.***, 173 DPR 870, 891-892 (2008). De la mano con esto, es norma reiterada de derecho que los foros revisores le concederán gran deferencia y consideración a las decisiones de las agencias administrativas, debido a la vasta

---

[11] *Íd.*, Anejo 3, págs. 75-88.

experiencia y el conocimiento especializado sobre los asuntos que le fueron delegados. ***Graciani Rodríguez v. Garage Isla Verde, LLC,*** 202 DPR 117, 126 (2019); ***Rolón Martínez v. Supte. Policía***, supra. Conforme a ello, los tribunales deben ser cautelosos al intervenir con las decisiones de los organismos administrativos. ***Metropolitana, S.E. v. A.R.Pe.***, 138 DPR 200, 213 (1995); ***Gallardo v. Clavell***, 131 DPR 275, 289–290 (1992).

Por las razones antes aludidas, las decisiones de las agencias administrativas gozan de una presunción de regularidad y corrección. ***Capó Cruz v. Junta de Planificación***, supra; ***Rolón Martínez v. Supte. Policía***, supra; ***García v. Cruz Auto Corp.***, supra, pág. 892. La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. ***Misión Ind. P.R. v. J.P.***, 146 DPR 64, 130 (1998).

Así, al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. ***Rebollo v. Yiyi Motors,*** 161 DPR 69, 76 (2004). Cónsono con ello, será necesario determinar si la agencia actuó de forma arbitraria, ilegal o de manera tan irrazonable que su actuación constituyó un abuso de discreción. ***Rolón Martínez v. Supte Policía,*** supra, pág. 35.

### B.

Por otro lado, es harto conocido que, "el corolario básico del Derecho apelativo es que *la apelación o revisión se da contra la sentencia o decisión apelada; es decir, contra el resultado y no contra sus fundamentos*". ***Pueblo v. Pérez***, 159 DPR 554, 566 (2003) (Énfasis en el original); ***Asociación de Pescadores de Punta Figueras, Inc. v. Marina de Puerto del Rey, Inc.***, 155 DPR 906, 920 (2001); ***Pérez Vda. De Muñiz v. Criado Amunategui***, 151 DPR

355, 374 (2000). Asimismo, "[l]os recursos se formulan contra el fallo, contra la parte dispositiva y no contra la opinión que pueda emitir el tribunal y sus conclusiones. Lo que agravia es la parte dispositiva, o sea, el fallo, el cual es el objeto del recurso". ***Pueblo v. Pérez***, supra, pág. 566 (*citando a* R. Hernández Colón, <u>Práctica Jurídica de Puerto Rico</u>, San Juan, Ed. Michie, 1997, pág. 323). Por lo tanto, aunque "algunos de los fundamentos de la sentencia recurrida sean erróneos, ello no constituye base para una revocación si por otros motivos puede sostenerse lo dispuesto en la sentencia". ***Sánchez v. Eastern Air Lines, Inc.***, 114 DPR 691, 695 (1983); ***Corrada v. Asamblea Municipal de Morovis***, 79 DPR 365, 370 (1956). Finalmente, la revisión de las órdenes o resoluciones interlocutorias se da contra la decisión emitida y no en contra de sus fundamentos. ***Ramos v. Hosp. Sub-Regional de Aguadilla***, 111 DPR 744, 750 (1981).

### IV.

En el presente caso, la señora Surillo Ascar presentó una *Solicitud de Revisión Administrativa* el 8 de julio de 2024. Por medio de esta, solicitó la eliminación de la determinación de hechos número 33 y la conclusión de derecho del tercer párrafo en la página 7 de la *Resolución* recurrida, por no estar de acuerdo en la forma en que están redactadas.

Sostuvo que, aunque la parte dispositiva de la *Resolución* recurrida fue favorable para ella, la agencia erró al emitir la determinación de hecho número 33: "[l]a parte querellante no le ha reclamado formalmente al titular del apartamento 18-I".[12] Ello, cuando se desprende de la determinación de hecho número 5 de la *Resolución* emitida el 23 de enero de 2008 por el DACO, y con relación a la querella número 100030408, que, "[i]gualmente solicitó

---

[12] *Íd.*, Anejo 2, pág. 68.

la intervención de la titular del apartamento 18-I, Lcda. Marta Meléndez".[13] Por lo cual contrasta con lo previamente decidido por el propio DACO, lo que constituye la ley del caso.

También alegó que DACO erró al emitir la conclusión de derecho que establece que, desde el año 2005, ella conocía que el origen de las filtraciones era la forma en que estaban instaladas las ventanas del apartamento 18-I de la licencia Meléndez. Lo anterior es contrario a lo que la agencia administrativa, a través de la referida *Resolución* emitida el 23 de enero de 2008, determinó previamente, en el sentido de que ella desconocía el origen de dichas filtraciones.

Resulta palmario que la recurrente no cuestiona, ni solicita revisar, el resultado de la decisión recurrida sino sus fundamentos. Tras un análisis objetivo, sereno y cuidadoso del expediente, resulta procedente desestimar el recurso, debido a que, este se limita a solicitar que revisemos una determinación de hecho y una conclusión de derecho, pero no solicita revisión sobre la parte dispositiva o el fallo emitido en la *Resolución* recurrida. Así, pues la revisión se da contra la decisión emitida y no en contra de sus fundamentos.

Consecuentemente, procede la desestimación del recurso de revisión judicial.

**V.**

Por los fundamentos pormenorizados, se *desestima* el recurso de revisión judicial.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[13] *Íd.*, Anejo 3, pág. 81.